**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**GIORGI MELIKISHVILI,**

**Petitioner,**

**- against -**

**TODD LYONS, ET AL.,**

**Respondents.**

**26-cv-4706 (JGK)**

**Memorandum Opinion and Order**

**John G. Koeltl, District Judge:**

On June 4, 2026, the pro se petitioner, Giorgi Melikishvili, initiated this action by filing an emergency motion for a temporary restraining order and stay of removal. ECF No. 1. The Court treated the petitioner's filing as a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 4. The petition seeks, among other relief, immediate release from his detention by Immigration and Customs Enforcement ("ICE") and a stay of his removal to Moldova. For the reasons that follow, the petition is **denied**.

**I.**

The following facts are drawn from the petition, the Government's return, and the accompanying declarations and exhibits. The facts are undisputed unless otherwise noted.

The petitioner is a Georgian national who entered the United States unlawfully near Otay Mesa, California on April 24, 2024. Decl. of Deportation Officer Dmitry Rousseau ("Rousseau Decl.") ¶¶ 2–3, ECF No. 8; see also ECF No. 7-1. U.S. Border Patrol ("BP") officers encountered him the next day and

took him into custody. Rousseau Decl. ¶ 3. On April 29, 2024, a BP officer issued a Notice and Order of Expedited Removal indicating that the petitioner was removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I). See ECF No. 7-2. On May 14, 2024, the Department of Homeland Security ("DHS") issued the petitioner a Notice to Appear ("NTA"), charging him as inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I) and 8 U.S.C. § 1182(a)(6)(A)(i). Rousseau Decl. ¶ 7; see also ECF No. 7-3. On May 20, 2024, the removal proceedings against the petitioner began when his NTA was filed with the immigration court. Rousseau Decl. ¶ 9. On July 16, 2024, an immigration judge ordered the petitioner to be removed to Georgia. Id. ¶ 12. On August 22, 2024, the petitioner successfully moved to reopen his immigration proceedings. Id. ¶ 17.

After a hearing held on December 6, 2024, the immigration judge ordered the petitioner removed from the United States but granted withholding of removal to Georgia pursuant to the Convention Against Torture ("CAT") and 8 C.F.R. § 1208.16. See Rousseau Decl. ¶ 22; ECF No. 7-5. The order of removal became final on May 19, 2025 when it was affirmed by the Board of Immigration Appeals ("BIA"). See Rousseau Decl. ¶ 24; ECF No. 7-6.

On June 28, 2025, DHS submitted requests for acceptance of the petitioner to the Consulate General of Spain, the Embassy of Latvia, and the Consulate General of Greece. Rousseau Decl. ¶ 25. Latvia declined to accept the petitioner, and DHS did not receive a response from Spain or Greece. Id. ¶¶ 26–27. On August 19, 2025, ICE determined that the petitioner posed a significant risk of flight and that he would accordingly remain in custody

while ICE pursued removal to a third country that would accept the petitioner. Rousseau Decl. ¶ 28; ECF No. 7-7.

On November 24, 2025, the petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Louisiana challenging his prolonged detention. Rousseau Decl. ¶ 29. On May 26, 2026, the court granted the petitioner habeas relief and ordered his immediate release, concluding that there was "no significant likelihood of Melikishvili's removal in the reasonably foreseeable future." Melikishvili v. U.S. ICE, No. 25-cv-01863, 2026 WL 1476683, at *2 (W.D. La. Apr. 21, 2026), report and recommendation adopted, No. 25-cv-1863, 2026 WL 1473758 (W.D. La. May 26, 2026).[1]

On May 27, 2026, ICE released the petitioner pursuant to an Order of Supervision ("OSUP") that required the petitioner to, among other things, regularly report to the agency. Rousseau Decl. ¶ 31; ECF 7-8. On May 29, 2026, ICE received confirmation that Moldova agreed to accept the petitioner. Rousseau Decl. ¶ 32. On June 3, 2026, ICE detained the petitioner during a scheduled check-in at 26 Federal Plaza, New York, New York, and informed the petitioner that he would be removed to Moldova. Pet. ¶ 15–16, ECF No. 1; ECF No. 15 at 1–2. ICE served the petitioner with a Notice of Revocation of Release and a Warrant of Removal/Deportation and conducted an informal

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

interview regarding the revocation of the petitioner's OSUP. Rousseau Decl. ¶¶ 33–34; ECF Nos. 7-9; 7-10.

On June 4, 2026, the petitioner filed an emergency motion for a temporary restraining order, stay of removal, and immediate judicial review, which the Court construed as a petition for writ of habeas corpus under 28 U.S.C. § 2241. ECF No. 4. That same day, the Court issued an Order staying the petitioner's removal or transfer from the Southern District of New York, the Eastern District of New York, or the District of New Jersey to preserve the Court's jurisdiction over the claim and to protect the petitioner's interest in participating in further proceedings. Id.[2] On June 10, 2026, the petitioner was served with a Notice of Imminent Removal Pursuant to 8 C.F.R. § 241.4(g)(4) and a Notice of Removal to Moldova. ECF No. 7-12. The Government maintains that it is prepared to remove the petitioner to Moldova at the conclusion of this case. ECF No. 9 at 8.

**II.**

District courts have the authority pursuant to 28 U.S.C. § 2241 to issue a writ of habeas corpus to any petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The jurisdiction conferred on federal courts by § 2241 includes the authority to

[2] The adjudication of the petitioner's habeas petition was delayed by the Court's efforts to appoint pro bono counsel for the petitioner, which the petitioner ultimately rejected.

review a noncitizen's claims challenging the constitutionality of the noncitizen's detention. See Demore v. Kim, 538 U.S. 510, 517 (2003).[3]

**III.**

**A.**

The petitioner challenges his ongoing detention as unlawful. The parties do not dispute that the petitioner's ongoing detention is governed by 8 U.S.C. § 1231, which authorizes the Government to detain individuals who are subject to a final removal order. Section 1231(a)(1)(A) mandates detention for a 90-day removal period that begins on the date the removal order becomes final. Section 1231(a)(6) authorizes discretionary detention beyond the mandatory 90-day removal period in certain instances. In Zadvydas v. Davis, 533 U.S. 678 (2001), the United States Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that detention pursuant to that statutory provision should be limited to "a period reasonably necessary to bring about that alien's removal from the United States." Id. at 689.

Zadvydas established six months as a presumptively reasonable period of detention after a final order of removal. Id. at 701. After this six-month period, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the

[3] In its opposition to the petitioner's habeas petition, the Government argued that the Court lacks jurisdiction to stay the petitioner's removal to Moldova pursuant to certain jurisdiction-stripping statutes in the INA, specifically 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g). ECF No. 9 at 19. The Government does not dispute, however, that this Court has jurisdiction to order exhaustion of administrative remedies, as it does here.

Government must respond with evidence sufficient to rebut that showing." Id. Zadvydas does not establish a bright-line rule against detention lasting longer than six months. In fact, the Court noted that a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

The petitioner's prior period of detention under 8 U.S.C. § 1231(a)(6) was just over a year long. Because the petitioner had a successful CAT claim for withholding of removal to Georgia, the Government searched for another country that would accept the petitioner. At the time the petitioner litigated his prior habeas petition, there was no other country that had agreed to accept the petitioner. The petitioner's order of removal became final on May 15, 2026, and he was released on May 27, 2026, after a federal court ruled that there was not a significant likelihood of removal in the reasonably foreseeable future under Zadvydas. Melikishvili, 2026 WL 1476683, at *2. The petitioner was then re-detained within one week of his release, again pursuant to 8 U.S.C. § 1231, on June 3, 2026. During the petitioner's brief release from detention, the Government received confirmation that Moldova agreed to accept the petitioner. Rousseau Decl. ¶ 32.

District courts are divided on whether multiple periods of detention may be aggregated for determining whether the presumptively reasonable period of detention has run. Compare Naranjo v. U.S. Att'y Gen., No. 26-cv-177, 2026 WL 554623, at *1 (M.D. Fla. Feb. 27, 2026) (holding that each period of detention "restarts the removal-period clock"), with Al Nassar v.

Rhoney, No. 26-cv-311, 2026 WL 1800891, at *5 (W.D.N.Y. June 23, 2026) (aggregating time between a three-month detention in 2018–2019 and a five-month detention in 2026); Jiang v. Genalo, No. 26-cv-2402, 2026 WL 1413915, at *4 (E.D.N.Y. May 20, 2026) (collecting cases rejecting the Government's argument that it could "restart the clock each time it fails to remove a noncitizen within six months").

In this case, the Court need not decide the issue because the petitioner's challenge to his ongoing detention fails in any event. The petitioner's current period of detention has run for roughly three and a half months, which falls comfortably within the presumptively reasonable six-month period established by Zadvydas. Thus, if his multiple periods of detention are not aggregated, then the petitioner's challenge to his current detention may be denied as premature. See Loachamin v. Kurzdorfer, 792 F. Supp. 3d 353, 363 (W.D.N.Y. 2025); De Oliveira Jimenez v. Searls, No. 22-cv-960, 2023 WL 11134381, at *5 (W.D.N.Y. Mar. 2, 2023).

If the petitioner's multiple periods of detention are aggregated, then his challenge to his ongoing detention pursuant to Zadvydas is not premature, but it still fails. Taking into consideration the petitioner's prior prolonged detention under 8 U.S.C. § 1231(a)(6), his current detention under the same statutory basis might not be entitled to a presumption of reasonability. Nevertheless, to be released, the petitioner still must "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably

foreseeable future," and the Government must fail to "rebut that showing." Zadvydas, 533 U.S. at 701; see also Al Nassar, 2026 WL 1800891, at *5.

The petitioner has not met his initial burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. In the petitioner's prior Zadvydas proceedings, the Government had not yet identified any country that was willing to accept the petitioner. That is no longer the case. The Government now represents that Moldova has agreed to accept the petitioner, a fact that the Government became aware of only after the petitioner was released from his previous period of detention. Rousseau Decl. ¶ 32. Although the petitioner argues that "Respondents have offered zero documentary evidence . . . confirming that Moldova has agreed to accept Petitioner," ECF No. 11 at 6, the Government has served the petitioner with a Notice of Imminent Removal and a Notice of Removal to Moldova. ECF No. 7-12. Although the petitioner may seek withholding of removal to Moldova, the petitioner has "come forward with no evidence to suggest that he cannot be swiftly removed upon the conclusion of his withholding-only proceedings . . . themselves and a noncitizen's use of the American judicial process, to the extent it delays removal, does not warrant release under Zadvydas." Lojo v. Garland, No. 22-cv-06340, 2023 WL 2867791, at *4 (W.D.N.Y. Apr. 10, 2023); see also Portillo v. Decker, No. 21-cv-9506, 2022 WL 826941, at *5 (S.D.N.Y.

Mar. 18, 2022) (denying Zadvydas claim where ongoing detention and delay in removal was caused by the petitioner's own challenges to removal).[4]

The petitioner has not raised a successful challenge to the legality of his current custody by ICE under Zadvydas and 8 U.S.C. § 1231. Therefore, his habeas petition challenging his ongoing detention is **denied.**

**B.**

In addition to his challenge to his ongoing detention, the petitioner seeks a stay of his removal and an opportunity to challenge his removal to Moldova. The Court denies the petitioner's request for relief because the petitioner has not exhausted his administrative remedies.

A "habeas petitioner must normally exhaust administrative remedies before seeking federal court intervention." Castillo Lachapel v. Joyce, 786 F. Supp. 3d 860, 864 (S.D.N.Y. 2025). "While 28 U.S.C. § 2241 does not include a statutory exhaustion requirement, district courts in this Circuit have recognized such a requirement as a prudential matter." Michalski v. Decker, 279 F. Supp. 3d 487, 495 (S.D.N.Y. 2018). "Exhaustion of administrative remedies serves numerous purposes, including protecting the authority of administrative agencies, limiting interference in agency affairs, and promoting judicial efficiency by resolving potential issues and developing the factual record."

---

[4] Indeed, the petitioner's removal to Moldova has been delayed by the petitioner's pursuit of his habeas proceedings with this Court, in which the Court prohibited the petitioner's removal from this judicial district and two contiguous districts.

Beharry v. Ashcroft, 329 F.3d 51, 56 (2d Cir. 2003), as amended (July 24, 2003).

Under 8 C.F.R. § 1003.23(b), the petitioner may move for reopening or reconsideration of his immigration proceedings to challenge his removal to Moldova. Motions to reopen are typically subject to time and number limitations: a motion to reopen must be filed within 90 days of the issuance of a final order, and a party may file only one motion to reconsider and one motion to reopen. 8 C.F.R. § 1003.23(b)(1). However, these limitations do not apply to motions to reopen that seek an application for withholding of removal under Section 241(b)(3) of the INA[5] or CAT when that application is based on "changed country conditions arising in . . . the country to which removal has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous proceeding." 8 C.F.R. § 1003.23(b)(4)(i). Upon moving to reopen, the petitioner may also request a stay of his removal from the immigration judge, the BIA, or an authorized DHS officer. Id.

The petitioner's request for relief is denied because the petitioner has not moved to reopen his case before an immigration judge and has therefore not exhausted his administrative remedies. Although the petitioner's removal

---

[5] This provision is codified at 8 U.S.C. § 1231(b)(3) which provides that: "Notwithstanding paragraphs (1) and (2), the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."

order became final over a year ago and the petitioner has already filed a previous motion to reopen, the enumerated exceptions to the time and number limitations would apply to the petitioner's motion to reopen to challenge his removal to Moldova. In the petitioner's submissions to the Court, he has indicated that he fears removal to Moldova and specifically fears "chain refoulement" back to Georgia, a country from which he was specifically granted withholding of removal to under CAT. ECF No. 11 at 7. Accordingly, the petitioner's challenge to his removal to Moldova falls into the exception described in 8 C.F.R. § 1003.23(b)(4)(i), and he can cite the Government's desire to remove him to a third country as grounds for the motion to reopen. For example, in Traore v. Decker, No. 19-cv-4612, 2019 WL 3890227 (S.D.N.Y. Aug. 19, 2019), a habeas petitioner who had previously been granted withholding of removal successfully moved to reopen his removal proceedings to contest his removal to a third country, citing the Government's desire to remove him to the third country as a "changed circumstance." Id. at *2. Similarly, here, the petitioner may cite the Government's desire to remove him to Moldova as a "changed circumstance" that supports his motion to reopen. The Government itself has agreed in response to this petition that "the regulations expressly allow reopening based on new facts or evidence, such as the notice of the third country of removal, or an asserted fear as to that country." ECF No. 14 at 2. Thus, the petitioner can move to reopen his immigration proceedings based on the notice of his third country removal to Moldova.

The petitioner's arguments that he is not required to exhaust his administrative remedies are unpersuasive. For example, the petitioner argues that there is "no adequate administrative remedy [] available" to the petitioner and that "exhaustion would be futile." ECF No. 15 at 3. But the exact relief that the petitioner seeks—namely, a stay of his removal and the ability to challenge his removal to Moldova—are available to him by a motion to reopen and a motion to stay filed with the immigration court. The Government has also represented to the Court that the procedural bars to a motion to reopen based on time and number do not apply to the petitioner's claim.[6]

Moreover, the immigration judge's determination on the petitioner's request to reopen his immigration proceedings to challenge his removal to Moldova "could potentially moot the habeas petition." Guzman v. Joyce, 786 F. Supp. 3d 865, 870 (S.D.N.Y. 2025). Because the petitioner has a non-futile remedy available to him in the administrative system, the Court denies

---

[6] This case is not one where the Government has removed the petitioner before the petitioner has had a chance to move to reopen. Removal of the petitioner has been stayed since June 4, 2026. ECF No. 4. The petitioner has an opportunity to make his motion to reopen without the typical procedural bars and can raise his objections to his removal before the immigration judge. Moreover, if the petitioner's motion to reopen is denied by the immigration judge, the petitioner can further appeal the denial to the BIA and the relevant court of appeals. See, e.g., Fang Li v. Holder, 743 F.3d 354, 356 (2d Cir. 2014) (per curiam); Twum v. I.N.S., 411 F.3d 54, 56 (2d Cir. 2005) (Sotomayor, J.). An order by the immigration judge regarding the substantive claim for withholding of removal would similarly be appealable to the BIA and a court of appeals. See Reeves v. I.C.E., No. 18-cv-6876, 2018 WL 11534223, at *2 (S.D.N.Y. Aug. 20, 2018). The administrative process thus provides the petitioner with a meaningful opportunity to review and to challenge his removal to Moldova.

habeas relief due to a failure to exhaust. See, e.g., Marshall v. Arteta, No. 26-cv-4110, 2026 WL 1724311, at *4 (S.D.N.Y. June 15, 2026) (denying habeas relief where the petitioner had a "non-futile remedy available to him in the administrative system").

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the foregoing reasons, the petitioner's petition for writ of habeas corpus is **denied**.

The current stay of the petitioner's removal from the Southern and Eastern Districts of New York and the District of New Jersey is continued for twenty-one days to provide the petitioner time to file a motion to reopen his removal proceedings in the immigration court.

The Government is directed to deliver a copy of this Order to the petitioner and to file proof of service on the docket. The Clerk is requested to email a copy of this Order to the petitioner's next friend whose address is listed on the docket.

The Clerk is respectfully requested to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:** **New York, New York**
**September 24, 2026**

John G. Koeltl
**United States District Judge**